IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL E. KEPLER, United States Trustee,

Plaintiff-Appellee,

v.

OPINION AND ORDER

12-cv-113-wmc

EARL ARTHUR EICHLINE, and
EARL A. EICHLINE REVOCABLE TRUST dated April 22, 2009, and any amendments thereto,
By its Trustee, Earl Arthur Eichline,

Defendant-Appellants.

---

On December 17, 1998, Earl Eichline deeded a 160-acre parcel of real property to his son. Two months later, the son agreed in writing that he would eventually convey the property back to Eichline or to a trust of Eichline's creation. In 2006, Eichline filed for Chapter 7 bankruptcy relief and declared that he had no interest in, or future claims to, any real estate. In 2009, Eichline demanded the property, and his son dutifully transferred it back to Eichline's newly-created trust. When the United States Trustee discovered this, he sought to reopen the bankruptcy case, void the transfer under 11 U.S.C. § 549 and recover the property for the benefit of the bankruptcy estate under § 550. The bankruptcy court agreed with the United States Trustee. Eichline now appeals.[1]

There are three dispositive questions that control the outcome on appeal: (1) whether the Trustee's avoidance action was barred by the statute of limitations; (2) whether Earl Eichline held a property interest in the 160-acre parcel at the time of his

---

[1] This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

bankruptcy, such that the land transfer is subject to avoidance; and (3) whether the bankruptcy court can allow the Trustee to recover this property for the benefit of the estate. For the reasons set forth below, the court finds that the avoidance action is not barred by the statute of limitations, but that avoidance under § 549 is literally impossible because Earl Eichline did not hold a property interest in the 160 acres at the time of his bankruptcy. Nevertheless, the bankruptcy court *may* have the ability to avoid the transfer under its broad equitable powers, particularly where it has found a fraud was committed against the Trustee and indeed against the court. This is, however, a question that must be answered upon remand. The Trustee must seek to obtain the property by advancing the estate's legal and equitable claims against Earl Eichline's son, Eric, unless the court finds on remand that the original transfer to Eric was part of an elaborate fraud on Earl's creditors from the start.

## BACKGROUND[2]

In December 1998, debtor-appellant Earl Eichline sold a 160-acre piece of property in Columbia County, Wisconsin, to his son Eric and his wife in exchange for a $33,000 note and a separate promise to pay $132,000 in cash. (For purposes of simplification, "Eric" in this opinion refers to both the son, as well as to the son and his wife when acting jointly.) Eric then mortgaged the property for $132,000 and paid the

[2] The court adopts in large part the bankruptcy court's findings of background facts, which the parties do not dispute. A full factual summary of this case may be found in the bankruptcy court's decision. (Bankr. W.D. Wis., Adv. No. 11-00100-rdm, dkt. #40.) A summary of the essential facts is provided here.

cash over to Earl, who used it to discharge a lien on the property. Earl never attempted to collect on the $33,000 note.

On February 27, 1999, Earl and Eric signed a written agreement in which Eric promised to convey the property either back to Earl or to "Earl's family trust" as soon as Eric's $132,000 mortgage was "paid, refinanced, or released for whatever reason." The contract stated that

> Earl has assisted [Eric] in obtaining a mortgage . . . on certain real estate . . . Earl and [Eric] wish to preserve the Real Estate for their mutual use and enjoyment, as well as the use and enjoyment of their heirs . . . [Eric] acknowledges that consideration for the transfer of title agreed to herein is both the assistance Earl gave to obtain and pay the Mortgage, as well as the other assistance given by Earl to permit [Eric] to obtain title to the Real Estate.

(Bankr. W.D. Wis., Adv. No. 11-00100-rdm, dkt. #21, ex. #11.) At the time of the agreement, there was no "family trust."

This document was in the possession of Earl's attorney until June 3, 2008, when it was recorded with the Register of Deeds for Columbia County. Nevertheless, when Earl Eichline filed for Chapter 7 bankruptcy relief in 2006, he declared that he had no interest in, or future claims to, any real estate. The bankruptcy was treated as a no-asset case and closed on December 3, 2007.

On April 22, 2009, the Earl A. Eichline Revocable Trust was created under Wisconsin law, with Earl as the trustee. On May 12, 2009, at Earl Eichline's insistence, Eric conveyed the 160-acre property to the Trust by quitclaim deed. This conveyance was publicly recorded on December 28, 2010. Between 1998 and 2008, the 160-acre property was refinanced several times and it is currently subject to a mortgage, but

substantial evidence suggests that there is a considerable amount of equity in the property, perhaps $600,000 or more.

On January 21, 2011, the United States Trustee filed a motion to reopen Earl Eichline's Chapter 7 bankruptcy case, having received information that Earl may have had an interest in the property that was not disclosed in his bankruptcy schedules and statement of financial affairs. The case was reopened, and the Trustee commenced an adversary procedure, which culminated in a trial on September 8, 2011.

In its post-trial memorandum decision, the bankruptcy court found that Eichline had retained an interest in the property pursuant to his 1999 agreement with his son, that the interest should have been listed in the bankruptcy schedule, and that the failure to list the property was fraudulent. Accordingly, the bankruptcy court found that the transfer of the property to the Earl A. Eichline Revocable Trust was an unauthorized post-petition transfer subject to 11 U.S.C. § 549. Pursuant to 11 U.S.C. § 550, the court, therefore, ordered the property recovered for the benefit of the bankruptcy estate.

## OPINION

When a district court reviews a bankruptcy court order, the district court applies a "clearly erroneous" standard to questions of fact, Fed. R. Bankr. P. 8013, and reviews de novo questions of law and the application of law to fact. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

**I. Statute of Limitations -- Equitable Tolling of § 549(d)**

Under 11 U.S.C. § 549(a), a bankruptcy trustee may avoid an unauthorized transfer of estate property that occurs after the commencement of the bankruptcy case, but must act within a two-year statute of limitations and before the case is closed, 11 U.S.C. § 549(d). In this case, the Trustee filed the avoidance action before the two-year period had run, but after the case had closed. Even so, the bankruptcy court allowed the action to proceed, concluding that the restrictions in § 549(d) had been equitably tolled until the Trustee had a reasonable opportunity to discover Earl Eichline's failure to disclose an ownership interest in the property. (*See* Decision, Bankr. W.D. Wis., Adv. No. 11-00100-rdm, dkt. #40 at 4.) This court agrees.

"[W]here the party injured by [a] fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute [of limitations] does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (quoting *Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636 (1875)).[3] Appellant does not even attempt to show that the Trustee's failure to discover the claim earlier was the product of a lack of reasonable diligence, and the bankruptcy court found

---

[3] Exercise of the equitable tolling power is appropriate in cases where a statutory time limit creates an affirmative defense, but not when the limit is a jurisdictional rule. *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278, 293-94 (8th Cir. 1986). Although § 549(d) does not obviously fall into either category, equitable tolling has been applied to § 549(d) by several circuits. See *In re Olson*, 36 F.3d 71, 73 (9th Cir. 1994) (collecting cases that suggest a consensus that § 549(d) is a true "statute of limitations"). This court also finds persuasive that the statute of limitations set forth in § 549(d) may be tolled when strong equitable considerations are present.

that (1) Earl Eichline intentionally failed to disclose his claim to the property "because he wanted to keep it in the family"; and (2) the "trustee would not have been able to discover the asset in the exercise of diligence during the course of the bankruptcy case. . . . because [the property transfer] was not recorded." (Decision, Bankr. W.D. Wis., Adv. No. 11-00100-rdm, dkt. #40 at 5-6.) While appellants argue that Earl simply "forgot" to mention the property, rather than that he intentionally hid his claim from the Trustee, the bankruptcy court's factual finding to the contrary was certainly not clearly erroneous. In light of the record, it was, if anything, quite reasonable.

## II. Avoidance

### A. Existence of a Contract

Section 549 allows a bankruptcy court to "avoid a transfer of property of the estate." The primary dispute between the parties on appeal is whether the 160-acre parcel of land held by Eric Eichline was actually Earl Eichline's property at the time of the bankruptcy. The bankruptcy court decided that it was, finding that Earl had a valid contractual right to the land. Appellants now argue that -- contrary to the express terms of parties' February 1998 writing -- there was never a valid contract between them because the writing was not supported by any consideration. Instead, appellants argue that the terms of the agreement consist of a bare promise by Eric to convey the property and a recitation of past consideration that was provided by Earl, but no reciprocal promise or valuable present consideration from Earl.

Wisconsin law, which the parties agree is controlling, follows the hornbook rule of contract formation that "past consideration is no consideration." *Chudnow Const. Corp. v. Comm. Discount Corp.,* 48 Wis. 2d 653, 658, 180 N.W.2d 697, 699 (Wis. 1970). (There are some minimal exceptions to the rule, but none is applicable here.) The bankruptcy court brushed appellants' objection aside by pointing out that a party cannot complain about lack of consideration after it has performed its end of the bargain. (Decision, Bankr. W.D. Wis., Adv. No. 11-00100-rdm, dkt. #40 at 4 (citing *Mitchell Bank v. Schanke*, 2004 WI 13, 33 & fn. 16 (Wis. 2004).) Appellants maintain that Earl Eichline had no "end of the bargain" to perform, which is true as far as it goes, since all of his actions pre-dated the writing. But this dispute about the terms of the February 1998 document erroneously assumes that the document was the entire agreement. There *was* a contract between Earl and Eric, but it is evidenced by a combination of Earl's earlier performance, the December deed, the February document, and the parties' subsequent conduct. Based on the record before it, the bankruptcy court had ample grounds to find Earl and Eric had agreed that (1) Earl would sell the property to Eric for the value of the lien of $132,000 and a promise to pay $33,000, representing a significant discount on the property's value, (2) Eric would mortgage the property for cash and then pay off the mortgage over time with Earl's assistance, while living on the land rent-free; and (3) eventually when the lien was discharged Eric would convey the property back to Earl. The terms of this broader contract were not only confirmed by the February document, but also, as the court found, by what actually happened. At the very least, Earl Eichline had a common law interest in all or part of the property, given his (purported) assistance

in obtaining and paying the mortgage and his sale of the property to Eric for under market price. Thus, regardless of the exact nature of Earl's legal or equitable claim, the bankruptcy court was correct in finding that Earl had a valuable interest in the land that should have been listed among the assets of the bankruptcy estate. Indeed, Earl conceded as much in his testimony.

**B. The Nature of Earl Eichline's Interest**

At the time of his bankruptcy, Earl Eichline had a contractual or quasi-contractual right. He did not, however, hold title to or a direct interest in the 160-acre parcel.

The bankruptcy court stated that "the value of Earl's interest in the Property is the value of the Property itself," but this may or may not be accurate because Earl's interest was only a contract claim to have the property deeded to him after the mortgage was paid off. At that time, therefore, the claim was presumably worth something less than outright ownership of the property, factoring in an appropriate discount for uncertainty as to when the mortgage might be paid down and by whom. Said again, what Earl appeared to have at the time he declared bankruptcy was a (potentially valuable, but still inchoate) contractual or equitable *legal claim against Eric*. It was misleading to describe this action as one to avoid a transfer of the property of the estate.[4]

[4] The adversary action here is for avoidance of the 2009 transfer of the property from Eric to the Eichline Revocable Trust, not the 1998 transfer of the property from Earl to Eric, unless the bankruptcy court were to find on remand that the original 1998 transfer was part of a larger fraud on the bankruptcy court.

Recognizing this, a § 549(a) avoidance appears to be unavailable, because that statutory section only permits the bankruptcy court to avoid transfer of "property of the [bankruptcy] estate." Unfortunately, if avoidance is impossible, then the result appears highly inequitable and would potentially reward Earl for what the bankruptcy court found was a deliberate fraud on the court. It might even put Eric on the hook to Earl Eichline's creditors for Earl's revived contract claim, without returning to Eric the property needed to satisfy that claim and would prevent the court from re-creating the situation back in 2006, when Earl should have disclosed his inchoate interest. Had Earl disclosed his contractual claim then, the Trustee could have pursued the claim against Eric (who still held the property), and the Trustee could have recovered the property itself or some or all of the proceeds of its sale.

There appears one way to both fully protect the creditors and Eric, as well as prevent Earl from benefitting from his bankruptcy fraud -- that is to void the transfer to the Eichline Trust, place the property back in Eric's hands, allow the United States Trustee to bring Earl's contract/equity claim against Eric, and let the Trustee and Eric resolve that claim. This remedy likely exceeds the scope of the bankruptcy court's powers under § 549, but not necessarily under the bankruptcy courts' equitable powers. Under § 105(a) of the Bankruptcy Code, a bankruptcy court can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also *In re NWFX, Inc.*, 864 F.2d 588, 590 (8th Cir. 1988) ("[T]he overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Ellis*, 441 B.R. 656, 666 (Bkrtcy. D. Idaho 2010) ("[S]ome courts have used their

discretion in crafting equitable remedies to put transferees in the position that they would have been in had the avoided transfer not occurred."). The court will, therefore, remand to the bankruptcy court to decide if this or another equitable remedy is appropriate under § 105(a) or other bankruptcy statute.

## III. Award of Recovery

After granting the avoidance, the bankruptcy court also allowed the estate to recover the 160-acre property pursuant to 11 U.S.C. § 550. Section 550 of the Bankruptcy Code applies where the trustee, having already avoided a transfer of some property, seeks to recover that property for the estate. Even assuming avoidance is possible, the estate only had a contractual claim against the 160-acre parcel at the time of the bankruptcy, not yet a property interest in the estate, nor on the record before it even the contractual right to insist on transfer unless the underlying mortgage had been paid, refinanced or removed. The bankruptcy court's grant of recovery of the property under § 550 was, therefore, premature and must be reversed.

ORDER

IT IS ORDERED that:

1) the decision of the bankruptcy court is REVERSED;

2) the case is REMANDED to the bankruptcy court for(1) a determination of whether avoidance is possible under the equitable powers granted it under the bankruptcy law; and (2) such further orders consistent with that determination.

Entered this 16th day of August, 2013.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge